UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: _9/25/13_____

CYNTHIA BRINK,

                          Plaintiff,

        - against -

FRANCENE MUSCENTE, AL DePIERRO, and
THE CITY OF YONKERS, New York,

                          Defendants.

**OPINION AND ORDER**

11 Civ. 4306 (ER)

Appearances:

Amy L. Bellantoni
The Bellantoni Law Firm, LLP
Scarsdale, New York
*Attorney for Plaintiff*

Joseph A. Maria
Frances Dapice Marinelli
Joseph A. Maria, P.C.
White Plains, New York
*Attorney for Defendants*

Ramos, D.J.:

        Plaintiff, Cynthia Brink ("Brink" or "Plaintiff"), owns a home in the City of Yonkers,

New York ("Yonkers" or the "City").  During the time period relevant to her complaint, Plaintiff

exhibited various signs on the face of her home and on her front lawn.  Certain of the signs

contained what is fairly described as political speech because, among other things, they criticized

certain Yonkers public officials.  She was issued citations for violating the City Code and

brought to trial for the violations.  She was acquitted of the charges.  Brink subsequently

commenced this action pursuant to 42 U.S.C. § 1983 against Francine Muscente s/h/a Francene

Muscente ("Muscente"), Al DePierro ("DePierro"), and the City (collectively, "Defendants"),

alleging violations of the First Amendment and a state law claim for malicious prosecution. Doc. 1 ("Compl.").  Plaintiff claims that Defendants violated her First Amendment rights by implementing a policy of restricting speech based on its content.  *Id.* ¶¶ 6, 11-12.  She claims that, in accordance with the City's policy, she was criminally prosecuted because of the substance of her opinions, as expressed on the signs that she posted in front of her home.  *Id.* ¶¶ 7, 12, 16.  Plaintiff also asserts a claim of malicious prosecution because the manner in which she posted her signs did not violate the City Code, and because "the politically-inspired prosecution [was commenced] in bad faith and with actual malice."  *Id.* ¶¶ 15-23.  As a result of Defendants' conduct, Plaintiff claims that she also suffered "pecuniary losses, public humiliation, public embarrassment, public shame, anxiety, emotional upset…and she was otherwise rendered sick and sore."  *Id.* ¶ 24.

Before this Court is Defendants' Motion for Summary Judgment on all of Plaintiff's claims.  Doc. 23.  For the reasons set forth below, Defendants' Motion is DENIED.

## I. Factual Background

### A. The Yonkers Sign Ordinance

Chapter 47 of the Yonkers City Code ("YCC" or the "City Code"), also known as the "Sign Ordinance," governs the display of outdoor signs.  YCC § 47-1.  The Sign Ordinance generally requires citizens to obtain permits for posting signs, § 47-3, and prohibits the posting of signs on public property.  YCC § 47-10 (proscribing the posting of a "sign of any description upon any curb, sidewalk, gutter, street, highway or public place or upon any hydrant, lamppost, tree, telephone pole, public utility pole, fence, bench, traffic signal stanchion, public building or any other item or structure in the street.").  Section 47-6 carves out certain exceptions to the Sign Ordinance, providing, in relevant part, that:

> The provisions and regulations of this chapter shall not apply to the following signs, provided that such signs shall be properly secured and shall be subject to §§ 47-1, 47-2, 47-8, 47-10, 47-12, 47-13, and 47-14:
>
> (1) Temporary signs, not permanently attached to a building or other inherently permanent structure and not permanently affixed to the ground, provided that such signs shall be displayed for no more than 90 days and shall not exceed 16 square feet in area.
>
> (2) Signs less than two square feet in area.

YCC § 47-6.  Thus, the Sign Ordinance forbids permit-less posting of signs on public property, but allows temporary signs to be posted on private property without requiring a permit.  It is this crucial distinction that gives rise to the instant litigation.

**B. Plaintiff's Signs**

Plaintiff lives at, and owns, a property located on Minerva Drive in Yonkers, New York ("Minerva Drive").  Defs.' R. 56.1 Stmt. ¶ 1, Doc. 24; Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 35, Doc. 31.  Plaintiff's front lawn features a stone wall, and a "grassy area" between the front of her stone wall and the paved roadway.  Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 36-37, Doc. 35; Marinelli Aff., Ex. F (Muscente Aff.), Doc. 28.  In January 2010, Plaintiff posted signs that she wrote or bought in a store and "pushed them in the ground" immediately in front of her home, "both behind the stone wall on her front lawn (closer to her house) and in front of the stone wall (closer to the street)."  Defs.' R. 56.1 Stmt. ¶¶ 2-3; Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 36.  Defendants claim that the grassy area between the stone wall and the street is owned by the City and refer to it as the "City's Right of Way."  Defs.' R. 56.1 Stmt. ¶ 4; Marinelli Aff., Ex. E (Rachiele Aff. ¶ 4).  While Plaintiff and Defendants agree that Plaintiff posted some signs on her private property and some signs on the City's Right of Way, they dispute whether the Right of Way is public or private property and whether the Sign Ordinance allows temporary signs to be posted in the City's Right of Way without a permit.  Whereas Defendants claim that the City's Right of Way

is public property, subject to § 47-10 of the Sign Ordinance, and that the City's Right of Way extends into the first 50 feet of Plaintiff's property (Marinelli Aff., Ex. E (Rachiele Aff. ¶ 4)), Plaintiff claims that the City's Right of Way is a part of her private property, over which the City has an easement for use, and in any event is *not* subject to § 47-10.  Pl. Opp. 11, Doc. 30; Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶¶ 10-11; Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 97-98.[1]   Plaintiff also disputes Defendants' claims regarding the actual boundaries of the City's Right of Way, including Defendants' claim that Plaintiff's stone wall encroaches on it.  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 11; Marinelli Aff., Ex. E (Rachiele Aff. ¶¶ 4, 9).

In an apparent attempt to remain within the regulatory definition of what constitutes a "temporary sign," Plaintiff removed her signs every 90 days, waited several days, and then put the signs back up again within a week of their removal.  Defs.' R. 56.1 Stmt. ¶ 6.  Some of the same signs posted by Plaintiff on January 29, 2010 appeared on her property on February 18, 2010 and May 7, 2010.  *Id.* ¶ 7.  Defendants seem to dispute whether Plaintiff's signs qualify as "temporary signs" under the Sign Ordinance based upon Plaintiff's pattern of removing and reposting signs, although Muscente herself has characterized Plaintiff's signs as "temporary."

---

[1] In support of her contention, Plaintiff cites YCC § 43-8 ("Definitions"), which defines a "right-of-way" as "an easement for ingress and egress, sometimes together with the right to maintain utilities within the easement area," and an "easement" as "[a] permanent right in an individual, the public or other entity to use the land of another for a specific purpose not inconsistent with the general ownership of the property."  Pl. Opp. 22.  Plaintiff acknowledges that the City may have a right of way over Plaintiff's property to, for example, install pipes, but argues that the City's right of way is an easement, *not* an ownership right, over her property.  Pl. Opp. 11.  Defendants, via the affidavit of Joseph Rachiele, the Director of Engineering at the City's Department of Engineering, claim that the *City* owns the City's Right of Way, which is "used by all of the public," and "includes, but is not limited to, areas for roads for vehicular access, installation of sewer and water mains, storm sewers, curbs, and sidewalks."  Marinelli Aff., Ex. E (Rachiele Aff. ¶ 4).  Defendants also claim that Plaintiff has admitted that the City owns the Right of Way because on October 26, 2012, Plaintiff stipulated that she would agree to maintain the City's Right of Way by cutting or mowing grass and weeds.  Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 36-38; Marinelli Aff., Ex. S (Oct. 26, 2012 Stip.).  However, the stipulation, Marinelli Aff., Ex. S., does not include any representations as to the ownership or dimensions of the City's Right of Way.

Marinelli Aff., Ex. R (Muscente Dep. 35:8 – 35:14), Doc. 34; Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 85-86.

The number—and content—of Plaintiff's signs varied insofar as Plaintiff sometimes added a few signs or retired others.  However, she always included signs criticizing Yonkers City Court Judge Michael Martinelli for "finding [the] woman who attacked [Plaintiff] and her elderly mother 'Not Guilty' after a bench trial," as well as signs about the woman acquitted by Judge Martinelli (the "Judge Martinelli Signs").[2]  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶¶ 5, 7, 39-40. Examples of the messages on the Judge Martinelli Signs include "Censure Martinelli" and "NO TRESPASSING Violators Will not be Prosecuted.  Thank Judge Martinelli."  Compl. ¶ 7 (emphasis in original); Marinelli Aff., Exs. G-1-G-3 (photographs attached to DePierro Aff.). Other signs posted by Plaintiff contained criticism of Yonkers Family Court Judge Colleen Duffy;[3] warnings about an unnamed stalker; and phrases such as:  "Colonial Heights is not safe," "You & Your Family Are Not Safe in Colonial Heights," and "This is a DANGEROUS neighborhood Protect Yourself no one else will."  Compl. ¶ 7 (emphasis in original); Marinelli Aff., Ex. C (Brink Dep. 59:8 – 59:16), Doc. 26; Marinelli Aff., Ex. D (Brink Dep. 76:15 – 76:20, 81:15 – 81:20), Doc. 27.

### C. Violations Issued to Plaintiff by Defendant Muscente

Defendant Muscente is a sign inspector for the City and has been employed in the Department of Housing and Buildings ("DHB") for approximately fifteen years.  Defs.' R. 56.1

---

[2] Plaintiff testified that a woman attacked her and her mother in their home on Minerva Drive in 2009.  Marinelli Aff., Ex. D (Brink Dep. 70:16 – 77:22).  The purported assailant was arrested and charged with assault and battery, but ultimately acquitted by Judge Martinelli after a bench trial.  Id.  Plaintiff also testified that her daughter was the victim of a murder.  Marinelli Aff., Ex. C (Brink Dep., 42:8 – 42:15, 51:19 – 55:10).

[3] Judge Duffy, although a Family Court judge, presided over a hearing related to Plaintiff's daughter's murder case. Marinelli Aff., Ex. C (Brink Dep., 53:23 – 54:20).  Plaintiff claims that Judge Duffy did not permit her to testify at the hearing, and that Judge Duffy rendered a decision that was unfavorable to her "as the mother of a murdered child."  Marinelli Aff., Ex. C (Brink Dep., 51:19 – 55:10).

Stmt. ¶ 18.  According to Muscente, on January 29, 2010, at the direction of her supervisor, Commissioner John P. Meyer ("Commissioner Meyer" or the "Commissioner"), she went to Minerva Drive in response to a complaint from the mayor's office concerning "[d]isplaying signs without a permit."  *Id.* ¶ 19; Marinelli Aff., Exs. F (Muscente Aff.); R (Muscente Dep. 16:10 – 16:20).  At her deposition, Muscente testified that she did not know the specific source of the complaint from the mayor's office, Marinelli Aff., Ex. R (Muscente Dep. 16:24 – 17:2), and characterized it as a "complaint by neighbors received out of City Hall," Marinelli Aff., Ex. F (Muscente Aff.).  When Muscente arrived at Plaintiff's home, she took photographs depicting the premises and signs, showed the photographs to Commissioner Meyer.  He then instructed her to issue a violation notice to Plaintiff.  Defs.' R. 56.1 Stmt. ¶ 19; Marinelli Aff., Ex. F (Muscente Aff.).  By correspondence dated January 29, 2010, Muscente issued a "First Violation Notice" to Plaintiff for "[d]isplaying signs at her premises … without obtaining a permit," which cited § 47-3 of the City Code.  Defs.' R. 56.1 Stmt. ¶ 21; Marinelli Aff., Ex. H (Jan. 29, 2010 Notice).

On February 5 or 6, 2010,[4] Muscente returned to Plaintiff's home and found that the violations had not been corrected.  Defs.' R. 56.1 Stmt. ¶ 22.  Thereafter, Muscente sent Plaintiff a Notice of Continuing Violation and Notice of Hearing scheduled for February 19, 2010 (the "Notice of Continuing Violation").  *Id.*; Marinelli Aff., Ex. I (Feb. 5, 2010 Notice).  Defendants dispute that Plaintiff faced criminal penalties for the Notice of Continuing Violation, despite the fact that, on its face, it discloses a potential penalty of fifteen (or more) days' imprisonment. Marinelli Aff., Ex. I (Feb. 5, 2010 Notice).

---

[4] Muscente's sworn affidavit, Marinelli Aff., Ex. F, states that "[o]n February 5, 2010 I performed a re-inspection of the premises [at Minerva Drive] for compliance," whereas, in her deposition, Muscente testified that she returned to Minerva Drive on February 6, 2010.  Marinelli Aff., Ex. R (Muscente Dep. 27:17 – 28:12).  The Notice of Continuing Violation bears a date of February 5, 2010.  Marinelli Aff., Ex. I.

On February 19, 2010, DHB Officer Conrad Orey ("Orey") presided over the hearing regarding the Notice of Continuing Violation (the "DHB Hearing").  Defs.' R. 56.1 Stmt. ¶ 23; Marinelli Aff., Ex. J (Feb. 9, 2010 Hr'g Rpt.).  The DHB Hearing attendees included Plaintiff, her brother, Steven Brink, and Muscente.  *Id.*  As Muscente testified at her deposition, "[w]e asked [Plaintiff] to please come in and get a permit for her temporary signs.  That was it." Marinelli Aff., Ex. R (Muscente Dep. 35:8 – 35:14).  At the DHB Hearing, Orey advised Plaintiff that she needed to remove all "illegal signs" by February 22, 2010, and that action would be taken if she failed to do so.  *Id.*; Marinelli Aff., Exs. F, J.  Although the February 19, 2010 Hearing Report (Marinelli Aff., Ex. J) states that "[Plaintiff] says that she will remove all illegal signs today," Plaintiff contends that she never agreed to remove the signs from her property.  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 23.  In addition, Plaintiff claims, and Defendants dispute, that at the DHB Hearing, Orey told Plaintiff that signs  such as "Merry Christmas," "Go Yankees," or "Happy Halloween" would be "fine," but that she had to remove her signs regarding Judge Martinelli "and the like."  *Id.* ¶¶ 81-83.  Defendants also dispute Plaintiff's claim that "[t]he only signs [posted by Plaintiff] that Muscente and Orey indicated were 'acceptable' [were] [] small sign[s] with three hearts that read, 'Live, Laugh, and Love.'"  *Id.* ¶ 84; Marinelli Aff., Ex. D (Brink Dep. 132:4 – 134:10).

On February 22, 2010, Muscente conducted another re-inspection of Plaintiff's home and concluded that Plaintiff had not removed all "illegal signs" as directed.  Defs.' R. 56.1 Stmt. ¶ 24; Marinelli Aff., Exs. F, J.  Muscente then issued a summons to Plaintiff for "displaying signs … without a sign permit," and requiring her to appear at the City Court of Yonkers on April 6, 2010.  Marinelli Aff., Ex. K (Feb. 22, 2010 Complaint/Information).  Plaintiff testified that she

appeared in court in connection with the "permit" summons approximately eight times. Marinelli Aff., Ex. D (Brink Dep. 146:25 – 147:17); Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶ 88.

Plaintiff disputes Muscente's interpretation of the Sign Ordinance and contends that "Muscente refused to follow the Yonkers City Code § 47-6 regarding 'Exemptions' to the permit requirements for signage."  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶¶ 58-59.  In her deposition, Muscente testified that "all signs need a permit," including temporary signs on private property. Marinelli Aff., Ex. R (Muscente Dep. 8:23 – 13:24).  Likewise, in her affidavit in support of Defendants' Motion, Muscente again represents that, "[i]n accordance with § 47-3(b) and as instructed by [Commissioner Meyer]," she has "always followed the procedure that all signs, whether they are temporary or not, require a permit."  Marinelli Aff., Ex. F.

### D. Violations Issued to Plaintiff by Defendant DePierro

Defendant DePierro is employed by the City of Yonkers Code Enforcement Bureau, and has held the position of Code Enforcement Officer Supervisor since approximately 2005.  *See* Marinelli Aff., Ex. Q (DePierro Dep. 5:16 – 5:22).  On April 8, 2010, DePierro went to Plaintiff's home in response to a complaint that he received about signs posted there.  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 26.  DePierro observed "[s]igns that were on the City's Right of Way and [on] private property."  Marinelli Aff., Ex. Q (DePierro Dep. 12:21 – 12:24).  DePierro photographed the signs that he believed to be in the City's Right of Way and returned to his office for further investigation.  Marinelli Aff., Ex. Q (DePierro Dep. 12:21 – 18:15).  DePierro consulted the Geographical Information System ("GIS"), a global map accessible through the City of Yonkers website that shows property lines, as well as tax records, and determined that Plaintiff was the owner of the premises.  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 27; Marinelli Aff., Exs. G (DePierro Aff.), Q (DePierro Dep. 15:10 – 18:7).  DePierro testified that he "needed to

check what was on private property" because he acknowledged that he couldn't write violations for signs on private property, and that he only wrote violations for signs on the City's Right of Way.  Marinelli Aff., Ex. Q (DePierro Dep. 17:14 – 17:24).  Upon concluding that some of Plaintiff's signs were on the City's Right of Way, on April 8, 2010 DePierro issued a warning notice to Plaintiff for illegally posting private signs on City property (the "April 8, 2010 Notice").  Marinelli Aff., Exs. M (Apr. 8, 2010 Notice), Q (DePierro Dep. 19:2 – 20:11).  The April 8, 2010 Notice directed Plaintiff to correct the violations "immediately."  *Id.*

On May 7, 2010, DePierro returned to Plaintiff's home in response to another complaint, concluded that the signs on the City's Right of Way had not been removed, photographed the signs, and issued an "Appearance Ticket/Information" (the "Information") to Plaintiff.  Defs.' R. 56.1 Stmt. ¶¶ 29-30; Marinelli Aff., Exs. N (May 7, 2010 Information), Q (DePierro Dep. 23:9 – 24:8).  The Information required her either to appear at the City Court of Yonkers on June 3, 2010, or plead guilty and pay a fine of $50.00.  Marinelli Aff., Ex. N.  Plaintiff disputes whether "private signs in the City's Right of Way" is a cognizable offense under § 47-10 of the City Code.  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 93.

**E. The December 16, 2010 City Court Proceeding**

On December 16, 2010, Acting City Justice Nicholas C. Maselli presided over a bench trial for two city code violations filed against Plaintiff, one charging her for displaying signs without a permit and the other one charging her with posting signs in the City's Right of Way.  Marinelli Aff., Ex. T, Doc. 37.  Justice Maselli adjudged Plaintiff not guilty of all charges.  Defs.' R. 56.1 Stmt. ¶ 32; Marinelli Aff., Ex. P (Excerpt of Dec. 16, 2010 Hr'g Tr.).  Defendants dispute the fact that Plaintiff faced criminal penalties and claim that this was not a criminal proceeding.  Defs. Reply Mem. 16, Doc. 36.

**F. Aftermath**

DePierro returned to the premises in response to an unrelated complaint in June 2011, and found that the signs in the City's Right of Way had been removed.  Defs.' R. 56.1 Stmt. ¶ 31.  The parties agree that Plaintiff has continuously had signs in her yard up to the present time. *Id.* ¶ 34.

## II. Legal Standard Governing Motions for Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."  *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009)

(citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B).  The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc.*, 542 F.3d at 310 (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57.  "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"  *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322).  In that situation, there can be no "genuine dispute as to any material fact," since a failure of proof on an essential element of the non-moving party's case "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

## III. Plaintiff's First Amendment Claim

### A. Legal Standard

In order to state a claim under Section 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  *See, e.g.*, *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  Thus, a civil rights action brought under § 1983 will stand only insofar as the plaintiff can prove an actual violation of his rights under the Constitution or federal law.  *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

In the Second Circuit, the viability of a prima facie First Amendment retaliation claim depends on the factual circumstances giving rise to the claim.  *Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008) ("We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.") (citations omitted).  "Private citizens alleging retaliation for their criticism of public officials" are generally required to show that "they engaged in protected

speech, persons acting under color of state law took adverse action against them in retaliation for that speech, and the retaliation resulted in 'actual chilling' of their exercise of their constitutional right to free speech." *Zherka*, 634 F.3d at 643.  To prove the "actual chilling" element, it is not enough for the plaintiff to show that she changed her behavior in some way; she "must show that the defendant intended to, and did, prevent or deter [her] from exercising [her] rights under the First Amendment." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012), *aff'd*, No. 12 Civ. 1811 (JSR), 2013 WL 1876610 (2d Cir. 2013).

However, in other private citizen cases, various forms of concrete harm have been substituted for the "actual chilling" requirement.  *Zherka*, 634 F.3d at 643, 645-46; *see also Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech"); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 (S.D.N.Y. 2011) (deeming allegations of retaliatory denial of building permits and a denial of an unconditional variance sufficient concrete harms to substitute for chilling effects); *Hafez*, 894 F. Supp. 2d at 222 (citing *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) (alleging harm in the form of municipal defendants' misapplication of zoning code in retaliation for plaintiffs' exercise of free speech rights)).  Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a subjective chilling requirement, Second Circuit courts have only required a showing (1) that the First Amendment protected the planitiff's conduct, and (2) that "defendants' conduct was motivated by or substantially caused by [the plaintiff's] exercise of speech." *Hafez*, 894 F. Supp. 2d at 222 (citing *Gagliardi*, 18 F.3d at 194 (citation omitted)); *see also Tomlins*, 812 F. Supp. 2d at 371 n.11.

**B. Discussion**

Defendants challenge Plaintiff's First Amendment claim by arguing that:  (1) Plaintiff cannot establish that she was deprived of any constitutional rights; (2) even if Plaintiff can establish that she was deprived of constitutional rights, Plaintiff cannot demonstrate that such deprivations resulted from the City's "Sign Code;" and (3) probable cause, and a lack of animus, supported Defendants' decision to issue sign-related violations to Plaintiff.  Defs. Mem. 28-29, Doc. 25.

**1.   No Showing of Subjective "Chilling" Required**

Plaintiff does not allege that Defendants' conduct chilled her speech, and she admittedly continued to post signs subsequent to the DHB Hearing, "believing that she had a First Amendment protected right to display her opinions on temporary signs at her home."  Compl. ¶ 14.  Rather, Plaintiff claims harm in the form of retaliatory charges brought against her.  Defs. Mem. 29.  Defendants argue that probable cause existed to issue violations to Plaintiff, and that a criminal charge is not the type of "retaliatory conduct…that constitutes an adverse action" under *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), that "would deter a similarly situated individual from exercising his or her constitutional rights."  Defs. Mem. 29.  The Court is not so persuaded.

It is well-settled that the First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  "Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'"  *Id.* (quoting *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)).  Accordingly, the Court finds that Plaintiff has adequately alleged a harm that obviates the need to prove subjective chilling effects.

14

*Puckett*, 631 F. Supp. 2d at 239 ("Chilling is required to be alleged only in cases where a plaintiff states no harm independent of the chilling of speech."); *see also Gagliardi*, 18 F.3d at 194 (no subjective chilling required where plaintiff alleged municipal defendants misapplied the zoning code in retaliation for plaintiffs' exercise of free speech rights).

### 2.   **Plaintiff Engaged in Activities Protected by the First Amendment**

It is well-established that signs are a form of expression protected by the First Amendment. *City of Ladue v. Gilleo*, 512 U.S. 43, 48-51 (1994); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 501-02 (1981). While a statute regulating speech "of private citizens on private property or in a traditional public forum is presumptively impermissible," *City of Ladue*, 512 U.S. at 59, the government may impose reasonable time, place, and manner restrictions on protected speech as long as they are content-neutral, "narrowly tailored to serve a significant government interest, and ... leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal quotation marks omitted); *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 804-07 (1984) ("the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others," but it is well-settled that the state may exercise police powers to advance aesthetic values).

The Court finds that Plaintiff has adequately demonstrated that she engaged in conduct protected by the First Amendment. Plaintiff's signs expressed various forms of protected speech, including political speech (*i.e.*, criticism of Judges Martinelli and Duffy). *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) ("[T]here is practically universal agreement that a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs."); *Sugarman v. Vill. of Chester*, 192 F. Supp. 2d 282, 291 (S.D.N.Y.

2002).  Additionally, the parties agree that at least some of the signs for which she was issued

violations were posted on her private property.  Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 39, 44, 55-56.

Plaintiff had a First Amendment right to post such temporary signs on her property and her

conduct was not prohibited by the Sign Ordinance.  In so holding, the Court finds that Muscente

also espoused an erroneous understanding of the very Sign Ordinance that she is charged with

enforcing:  that all signs, whether temporary or permanent, require a permit.  Marinelli Aff., Ex.

F.  Specifically, the Court finds that § 47-6 explicitly exempts temporary signs on private

property.  *See* YCC § 47-6 ("[t]he provisions and regulations of this chapter shall not apply to …

[t]emporary signs … provided that such signs shall still be subject to … § 47-10").

### 3.  Motivation for Defendants' Conduct

The element of intent requires an assessment of what evidence, if any, demonstrates that

Defendants' conduct "was motivated by or substantially caused by [Plaintiff's] exercise of free

speech."  *Tomlins*, 812 F. Supp. 2d at 371 (quoting *Gagliardi*, 18 F.3d at 194).  "Specific proof

of improper motivation is required in order for plaintiff to survive summary judgment on a First

Amendment retaliation claim."  *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2000)

(citing *Blue v. Koren*, 72 F.3d 1075, 1082-83 (2d Cir. 1995)).  Evidence of improper motive

"may include expressions by the officials regarding their state of mind, circumstances suggesting

in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the

actions taken."  *Blue*, 72 F.3d at 1084.  Second Circuit courts have declined to examine the

officer's underlying motive "[i]f the officer had probable cause or arguable probable cause to

arrest the plaintiff."  *Singer*, 63 F.3d at 120; *see also Mozzochi v. Borden*, 959 F.2d 1174, 1179-

80 (2d Cir.1992).  However, "if a genuine issue of material fact exists on whether there was

probable cause for the arrest, granting summary judgment on a First Amendment claim may be

inappropriate." *Anderson v. City of New York*, 817 F. Supp. 2d 77, 96-97 (E.D.N.Y. 2011)

(citing *Musso v. Hourigan*, 836 F.2d 736, 743-44 (2d Cir. 1988), *reconsideration denied*, No. 06

Civ. 5363 (KAM) (VVP), 2011 WL 5175600 (E.D.N.Y. Oct. 31, 2011).

      Here, Plaintiff and Defendants have presented conflicting narratives.  Plaintiff claims that

the City had a policy of improperly issuing violations of the Sign Ordinance based upon the

content of speakers' views, Compl. ¶¶ 15-23, and that, in accordance with this policy, the DHB

issued her violations and asked her to remove all signs from her property except for her "Live,

Laugh, Love" signs.[5]  Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 84; Pl. Opp. 20-21.  Plaintiff testified

that, during the DHB Hearing with Officer Orey, he made statements indicating that the DHB

"didn't like what was on [Plaintiff's] signs," but that signs with different content, such as "Merry

Christmas" or "Go Yankees," would be permissible.  Marinelli Aff., Ex. D (Brink Dep. 132:4 –

134:7).  Plaintiff further claims that Defendants lacked probable cause to issue her the violations

that culminated in the proceeding before Justice Maselli.  Pl. Opp. 14-15.  While Muscente

denies that there was any discussion with Commissioner Meyer about the content of Plaintiff's

signs, Marinelli Aff., Ex. R (Muscente Dep. 16:4 – 16:23), and could not recall anyone

discussing the content of Plaintiff's signs at the DHB Hearing, Marinelli Aff., Ex. R (Muscente

Dep. 35:11 – 37:21), these are disputed and material facts that cannot be resolved by the Court

on summary judgment.  In addition, as previously noted, Muscente misapplied the Sign

Ordinance.  Construing the facts in the light most favorable to Plaintiff, it is unclear whether

probable cause existed for Plaintiff's violations or whether, as alleged by Plaintiff, Defendants

harbored improper motives.  Accordingly, genuine issues of material fact preclude summary

judgment on the element of intent.  *Anderson*, 817 F. Supp. 2d at 97; *see also Locurto v. Safir*,

---

[5] Plaintiff testified that the "Live, Laugh, Love" signs consist of three hearts on her house, and resemble "stones
with words" more so than signs.  Marinelli Aff., Ex. D (Brink Dep. 133:11 – 133:20).

264 F.3d 154, 167 (2d Cir. 2001) ("[R]esolution of a First Amendment retaliation claim on a

motion for summary judgment may not be possible if the plaintiff introduces sufficient evidence

to create a genuine issue of material fact on the question of defendant's improper intent, which is

a question of fact.") (citations omitted).

Defendants' motion for summary judgment on Plaintiff's First Amendment claim is

therefore DENIED.

### 4.  Municipal Liability

Defendants also argue that summary judgment is warranted in favor of the City because

Plaintiff has failed to sufficiently allege facts that support a cause of action against it, and that

"[a] single incident as alleged in Plaintiff's complaint … generally will not suffice to raise the

inference of the existence of a custom or policy."  Defs. Reply Mem. 14-15.

Contrary to Defendants' argument, under the Supreme Court's holding in *Pembaur v.*

*City of Cincinnati*, a single decision to adopt a particular course of action that is made by an

authorized decisionmaker "represents an act of official government 'policy' as that term is

commonly understood."  475 U.S. 469, 481 (1986) ("[W]here action is directed by those who

establish government policy, the municipality is equally liable whether that action is to be taken

only once or to be taken repeatedly.").  Here, Plaintiff has sufficiently alleged that DePierro and

Muscente are City policymakers based upon their final, discretionary decision-making authority

with respect to the commencement of actions for violations of the Sign Ordinance.  Compl. ¶¶ 4-

5.  Muscente also testified that her superior, Commissioner Meyer, directed her to issue the

initial violation to Plaintiff.  Marinelli Aff., Exs. F (Muscente Aff.); R (Muscente Dep. 16:10 –

16:20).  Moreover, the Court cannot foreclose the possibility that the officers' conduct resulted

from the existence of a City custom or policy because Defendants specifically argue that,

"[b]ased on her fifteen [] years as a sign inspector and *the procedure [Muscente] was trained to follow* pursuant to the City of Yonkers Code, all signs, whether temporary or not, require[] a permit."  Defs. Mem. 18 (emphasis added); *see also* Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶ 62.[6]  Thus, Plaintiff has sufficiently alleged grounds for municipal liability.

## IV. Plaintiff's Malicious Prosecution Claim

### A. Legal Standard

Plaintiff brings a malicious prosecution claim under the common law of the State of New York, over which she asks the Court to exercise supplemental jurisdiction.[7]  Compl. ¶¶ 2, 28. Under New York law, to prevail on a claim for malicious prosecution, a plaintiff must show that the defendant commenced or continued a proceeding against her, with malice and without probable cause, and that the proceeding was terminated in her favor.  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Manganiello*, 612 F.3d at 161-62 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir.2003)).  "In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in

---

[6] By contrast, DePierro testified that the City Code only prohibits posting of temporary signs on public property. Marinelli Aff., Ex. Q (DePierro Dep. 17:14 – 17:24).

[7] Plaintiff only asserts a *state* claim for malicious prosecution.  Defendants, at Reply Mem. 16-17, seem to argue that the federal malicious prosecution standard should apply here, but it does not.  A federal malicious prosecution claim under § 1983 is "substantially the same" as a claim for malicious prosecution under state law, the key difference being that, when a plaintiff asserts a federal malicious prosecution claim, she must also establish a Fourth Amendment violation.  *Jocks v. Tavernier*, 316 F.3d 128, 134, 136 (2d Cir. 2003); *see also Roberts v. Babkiewicz*, 582 F.3d 418, 420 (2d Cir. 2009); *Singer*, 63 F.3d at 116 (explaining that plaintiff must show a post-arraignment "deprivation of liberty consistent with the concept of 'seizure.'").

the manner complained of.'"  *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) (citing

*Pandolfo v. U.A. Cable Systems of Watertown*, 171 A.D.2d 1013 (4th Dep't 1991); *Colon v. City

of New York*, 60 N.Y.2d 78, 82 (1983)).  "A party may act with probable cause even though

mistaken, for a mistake of fact as to the identity of a criminal may be consistent with probable

cause if the party acted reasonably under the circumstances in good faith."  *Colon*, 60 N.Y.2d at

82 (citations omitted).  "Conversely, the failure to make a further inquiry when a reasonable

person would have done so may be evidence of lack of probable cause."  *Id.* (citation omitted).

"Once an issue of fact exists with regard to the possible lack of probable cause, the

element of malice becomes an issue of fact as well," resulting in denial of summary judgment.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 274 (S.D.N.Y. 2010) (citing *Ricciuti v. New

York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("In the present case, as we have just

noted, a jury could find that probable cause for the charges against the plaintiffs was lacking, and

that finding alone would support an inference of malice.")).

## B. Discussion

### 1.  The City Court Proceeding

With respect to the first element of Plaintiff's malicious prosecution claim, Defendants

argue that "the overwhelming evidence" shows that the December 16, 2010 bench trial before

Justice Maselli was not a criminal proceeding.  Defs. Reply Mem. 16.  This argument fails to

provide a basis on which the Court can grant summary judgment in Defendants' favor.

First, unlike the context of a constitutional claim for malicious prosecution brought under

42 U.S.C. § 1983, under New York law, non-criminal administrative proceedings which exhibit

"sufficient attributes of judicial proceedings" may form the basis for a malicious prosecution

claim.  *Washington v. Cnty. of Rockland*, 211 F. Supp. 2d 507, 512 (S.D.N.Y. 2002) (discussing application of New York law), *aff'd*, 373 F.3d 310 (2d Cir. 2004).

Second, if anything, the evidence cited by Defendants suggests that the City Court proceeding was a criminal one.  Defendants argue that the notices and violations issued to Plaintiff (Marinelli Aff., Exs. I, K, M) prove the non-criminal nature of the proceeding, yet the City Code (§ 47-17(A) and Art. 3 § 1-21 (classifying violations of the Sign Ordinance as a Class II Offense)) and the February 5, 2010 Notice of Continuing Violation (Marinelli Aff., Ex. I) both clearly contemplate criminal penalties:

> Failure to comply with a lawful code enforcement order is enforceable by *criminal* penalties.  Each day a violation continues is a separate offense.  Each violation is punishable as follows:
>
> First offense:  Fine of at least $500.00 but not more than $1,000.00 or by imprisonment for not more than 15 days, or both.
> Second offense:  Fine of at least $750.00 but not more than $1,000.00 or by imprisonment for at least 5 days but not more than 15 days.
> Third offense:  Fine of $1,000.00 and imprisonment for at least 16 days, but not more than 1 year.

Marinelli Aff., Ex. I (emphasis added).  Defendants also attempt to establish the non-criminal character of the proceeding based upon a trial transcript excerpt[8] (Marinelli Aff., Ex. T) in which the City Court describes the case as a "matter of two City Code violations," but does not describe the violations as criminal or civil.  The excerpt relied upon by Defendants further suggests that the proceeding was, if anything, criminal because it includes representations by Assistant Corporation Counsel that:  (1) the charges against Plaintiff "are petty violations," (2) "there is no jail alternative and nor is one being requested,"[9] and (3) the law does not support the conclusion

---

[8] No party to this action has provided this Court with a complete transcript of the proceedings before the City Court.

[9] The City's choice not to seek jail time does not necessarily render Plaintiff's claim non-actionable; while a federal claim for malicious prosecution requires a plaintiff to establish a Fourth Amendment violation, Plaintiff's state law claim requires no such showing.  *See, e.g.*, *Jocks*, 316 F.3d at 134-36.

that [Plaintiff] is entitled to a supporting deposition" because "[t]he instruments are sufficient and have been so found as sufficient pursuant to CPL 100." *Id.*  Article 100 of New York Criminal Procedure Law describes "Local Criminal Court Accusatory Instruments" and relates to the commencement of criminal actions.  *See* N.Y. Crim. Proc. Law § 100 *et seq.*  Accordingly, the nature of the City Court proceeding fails to provide a basis for the Court to grant summary judgment to Defendants.

### 2.  Probable Cause and Malice

Defendants concede the second element of malicious prosecution, that the City Court proceeding was terminated in Plaintiff's favor.  *See* Marinelli Aff., Ex. P.  With respect to the third and fourth elements of malicious prosecution, Defendants argue that they are entitled to summary judgment because "[t]he violations issued to Plaintiff were based in the law;" "[p]robable cause existed…because Muscente and DePierro acted on reasonable grounds;" and "undisputed facts do not support the existence of any actual malice on the part of the individual Defendants."  Defs. Mem. 30.  Defendants claim that they were "merely responding to complaints of neighbors and observed signs on Plaintiff's property that were either displayed without a permit or located on City property, all contrary to the City…Code."  *Id.*

It remains thoroughly unclear whether the City Code actually supported any of the violations issued by Defendants to Plaintiff because neither party has conclusively established whether Plaintiff posted her signs on public or private land (though Defendants concede that some of the signs for which she was issued violations were on private property).  DePierro testified at his deposition that, in April 2010, he observed signs in front of Plaintiff's home, "check[ed] GIS maps and tax records, [] determined that some of the signs were [on the City's Right of Way], and … issued a warning notice."  Marinelli Aff., Ex. Q (DePierro Dep. 15:10 –

15:16).  Even assuming, as Defendants do, that § 47-10 of the Sign Ordinance includes the City's

Right of Way as a "public place," and therefore prohibits citizens from posting signs on the

City's Right of Way, it remains the case that the parties dispute a crucial issue of material fact—

the boundaries of the City's Right of Way.  As an exhibit to its moving papers, Defendants offer

for the first time a sworn statement from an engineer employed by the City, and prepared for the

purpose of this litigation, in an attempt to finally and conclusively prove the location of the

City's Right of Way.  (Marinelli Aff., Ex. E (Rachiele Aff.)).  However, the Court cannot grant

summary judgment based upon an affirmation from an interested party such as Mr. Rachiele.

*See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000) (on motion for

summary judgment, district court "must disregard all evidence favorable to the moving party that

the jury is not required to believe"); *Williams v. City of White Plains*, 718 F. Supp. 2d 374, 377

(S.D.N.Y. 2010) (evidence that court should disregard on summary judgment "includes

testimony and affidavits from interested witnesses").  "Credibility assessments, choices between

conflicting versions of the events, and the weighing of evidence are matters for the jury, not for

the court on a motion for summary judgment.'"  *McClellan*, 439 F.3d at 144.

Moreover, Plaintiff argues that the Rachiele Affidavit should be precluded because:  (1)

Defendants failed to disclose Rachiele's existence prior to filing their motion; (2) Plaintiff has

been unable to depose Rachiele or retain an expert to rebut his opinions; and (3) Rachiele

improperly opines on legal definitions, thereby invading the province of the Court and the jury.

Pl. Opp. 9-10.  To the extent that Defendants seek to offer Rachiele as an expert, the Court

cannot grant summary judgment on the say so of expert testimony because juries are entitled to

discredit or reject expert testimony.  *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997).

Additionally, the Court need not consider the Rachiele Affidavit as admissible evidence given

Defendants' failure to earlier disclose his existence.  Pl. Opp. 9-10; Defs. Reply Mem. 9.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).  "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  *Raskin*, 125 F.3d at 66 (noting district court's broad discretion in determining admissibility of evidence, including expert reports, at summary judgment phase).  Accordingly, at this juncture, the Court cannot adequately assess the reasonableness of prosecuting Plaintiff for the violations issued by Defendants for posting signs on the City's Right of Way.

The parties are in agreement that some of Planitiff's signs were on her private property, but Muscente's testimony indicates that the DHB asked Plaintiff to remove the signs that she posted on her private property, as well as those on the City's Right of Way.  Marinelli Aff., Exs. F (Muscente Aff.), R (Muscente Dep. 35:11 – 35:14, 40:9 – 41:24); Defs.' Resp. Pl.'s R. 56.1 Stmt. ¶¶ 39, 43; Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶¶ 4-5.  Muscente's interpretation of the law is erroneous, as the City Code explicitly exempts temporary signs on private property from the permit requirement.[10]  She could not explain how the exemption of § 47-6 applies to temporary signs.  Muscente testified that "[t]his is the procedure that [Commissioner Meyer] asked me to follow … that all signs have permitting, whether temporary or not."  Marinelli Aff., Ex. R (Muscente Dep. 13:8 – 13:24).  Thus, to the extent that Defendants argue that probable cause

---

[10] In addition to the plain language of §§ 47-3, 47-6 and 47-10, the fact that § 47-5, which addresses permit fees, does not include a description of any fees for "temporary permits," nor does any subsection of Chapter 47 describe a mechanism through which one may be able to procure a temporary permit, also strongly suggests that the City Code exempts temporary signs from the permit requirement of § 47-3.  The *only* evidence presented here that temporary signs placed on private properties require permits is the testimony of Muscente that "all signs need a permit."  Marinelli Aff., Ex. R (Muscente Dep. 8:23 – 13:24).

existed to issue Plaintiff violations for temporary signs posted on private property, or that the City had probable cause to prosecute her for such violations, the Court DENIES Defendants' summary judgment motion on that basis.

Since, in the context of a summary judgment motion, a court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party, this Court cannot conclude, as a matter of law, that Defendants had probable cause to initiate a criminal charge against Plaintiff.  When viewed most favorably to plaintiff, the factual record here does not foreclose the possibility that Defendants initiated the proceeding without probable cause. Because an issue of fact "exists with regard to the possible lack of probable cause, the element of malice becomes an issue of fact as well."  *Brandon*, 705 F. Supp. 2d at 274 (citation omitted).

Accordingly, Defendants' motion for summary judgment dismissing Plaintiff's claim for malicious prosecution is DENIED.

## V. Whether Muscente and DePierro Are Entitled to Qualified Immunity

### A. Legal Standard

Muscente and DePierro have raised a defense of qualified immunity.  Defs. Reply Mem. 12-14; Defs. Mem. 17-19.  "[A] defendant has the burden of proof with respect to affirmative defenses, and qualified immunity is such a defense."  *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012) (citing, *e.g.*, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).  Qualified immunity generally shields from liability government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Supreme Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "First, a court must decide whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right," *id.*, and then "[s]econd, if the plaintiff has satisfied this first step, whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* The Supreme Court has allowed "district courts ... to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello*, 612 F.3d at 164 (citations and quotation omitted). As explained by the Second Circuit in *DiStiso v. Cook*, "[q]ualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions, and protects all but the plainly incompetent or those who knowingly violate the law from liability for damages." 691 F.3d 226, 240 (2d Cir. 2012) (citations and quotations omitted). The applicability of qualified immunity "turns on the objective legal reasonableness of the challenged action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* The objective reasonableness test is met if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Tierney v. Davidson*, 133 F.3d 189, 196 (2d Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Lennon v. Miller*, 66 F.3d 416,

421 (2d Cir. 1995) (summary judgment on a qualified immunity defense is appropriate "if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances").

## B. Discussion

The First Amendment freedom of expression is a clearly established right and likewise, proscribing speech based upon its content is a clear violation of that right.  "First Amendment protections, furthermore, are especially strong where an individual engages in speech activity from his or her own private property." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006) (citing *City of Ladue*, 512 U.S. at 58 (declaring unconstitutional a city ordinance that banned nearly all residential signs, noting that "[a] special respect for individual liberty in the home has long been part of our culture and our law" and "has special resonance when the government seeks to constrain a person's ability to speak there")).

Defendants argue that they deserve qualified immunity because "[i]t was objectively reasonable for them to believe that they were performing their job duties and not  violating Plaintiff's First Amendment right of free speech."  Defs. Reply Mem. 12.  Defendants also tautologically claim, without citation to the record, that "the evidence shows that there was probable cause for issuing a notice of violation to the Plaintiff," Defs. Mem. 29, and that "probable cause existed because [Defendants] acted on reasonable grounds," *id.* at 30.

Defendants' arguments are unavailing.  Muscente has repeatedly represented that "all signs need a permit," including temporary signs on private property:  a flawed interpretation of the law, not a mistake of fact.  Marinelli Aff., Exs. F (Muscente Aff.), R (Muscente Dep. 8:23 – 13:24).  While, unlike Muscente, DePierro claims to have conducted an independent examination of the City property records before issuing any violations to Plaintiff, as discussed *supra*, factual

disputes regarding the location of the City's Right of Way vis-à-vis Plaintiff's property, and the attendant lack of clarity regarding whether Plaintiff received violations from Defendants for signs that she posted on public versus private property, preclude the Court from making an informed assessment regarding the existence of probable cause.  Particularly when viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude that Defendants acted reasonably.  Where, as here, there is a dispute regarding the material facts, "the factual questions must be resolved by the factfinder."  *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) (holding that qualified immunity should be decided by the court "only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required").[11]

Thus, Defendants are precluded from the defense of qualified immunity at the summary judgment stage and the Court DENIES Defendants' motion on that basis.

---

[11] The Court notes that if Defendants had conclusively established that a permit is required for signs posted on the City's Right of Way, then DePierro would have been entitled to qualified immunity because he made efforts, even if mistaken, to issue violations only for those signs posted on the City's Right of Way.

**VI. Conclusion**

For the reasons set forth above, Defendants' Motion for Summary Judgment on all claims is DENIED.  The Clerk of the Court is respectfully directed to terminate this motion, Doc. 23.

The parties are instructed to file a joint pre-trial order in accordance with Rule 3(A) of my Individual Practices by **October 30, 2013**, and to appear for a final pre-trial conference on **November 6, 2013 at 12:30 AM**, at which time the Court will set a trial date and a schedule for all pre-trial filings.


It is SO ORDERED.


Dated:    September 25, 2013
          New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.