UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CYNTHIA BRINK,

                              Plaintiff,

        – against –

FRANCENE MUSCENTE, AL DePIERRO and
THE CITY OF YONKERS,

                              Defendants.

**OPINION AND ORDER**

11 Civ. 4306 (ER)

---

Ramos, D.J.:

      This action arose from a dispute concerning the enforcement of a local sign ordinance in Yonkers, New York. Plaintiff Cynthia Brink (the "Plaintiff" or "Brink") commenced this action against the City of Yonkers (the "City") and two of its sign code enforcement officials, Francine Muscente ("Muscente") and Al DePierro ("DePierro," and together with Muscente and the City, "Defendants"), alleging claims for (1) First Amendment retaliation under 42 U.S.C. § 1983 and (2) malicious prosecution under New York state law. The gravamen of Plaintiff's claim is that Defendants unlawfully targeted her—including by initiating a criminal case against her for alleged violations of the City Code—because they disapproved of the content of the signs that she posted in her yard, which criticized certain public officials. Following a jury trial before the undersigned, the jury returned a verdict in favor of Defendants on both counts.

      Presently before the Court is Plaintiff's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Doc. 62. Plaintiff contends that the jury verdict is seriously erroneous, against the weight of the evidence and amounts to a miscarriage of justice. For the reasons set forth below, the motion is DENIED.

I.  **Factual Background**[1]

As discussed at length in the Court's summary judgment opinion, the Yonkers City Code forbids the posting of signs on public property without a permit, but allows temporary signs to be posted on private property without requiring a permit. Doc. 38 (citing Y.C.C. §§ 47-1, 47-3, 47-6; 47-10). Plaintiff posted a number of signs on her property, some of which generally criticized certain Yonkers public officials or could otherwise fairly be described as containing political commentary. Plaintiff conceded that she never obtained a sign permit for any of her signs, but contended that she did not need such a permit because the signs that she posted were temporary and located on her own property. The chief factual disputes that the Court could not resolve on summary judgment, and therefore had to be submitted to a jury, included (1) whether Plaintiff posted her signs on public or private property, (2) whether Defendants had probable cause to issue violations of the City Code to Plaintiff, and (3) whether Defendants issued such violations based upon any improper motive. *Id.*

A jury trial in this matter began on May 13, 2014. The jury heard direct testimony and cross-examination from the following witnesses: Plaintiff; Steven Brink, Plaintiff's brother; Defendants Muscente and DePierro; and Conrad Orey, a former City employee who supervised Muscente. Maria Aff. Ex. D (Trial Tr. 14:2 – 14:13, May 14, 2014), Doc. 68; *id.* at Ex. G (Trial Tr. 2:9 – 2:16, May 14, 2014).

Perhaps unsurprisingly, the parties presented competing factual narratives at trial. Plaintiff testified that Muscente issued violations to her for her signs because they contained messages of which Muscente did not approve. As a result of the tickets, Plaintiff was compelled

---

[1] The Court assumes the parties' familiarity with the facts underlying this case, and limits its factual summary to issues relevant to the instant motion. For a more extensive discussion, *see* Opinion and Order, Doc. 38, *Brink v. Muscente*, No. 11 Civ. 4306 (ER), 2013 WL 5366371 (S.D.N.Y. Sept. 25, 2013).

to attend a hearing in February 2010 concerning her signs. Bellantoni Decl. Ex. 1 (Trial Tr. 15:18 – 17:3, May 13, 2014), Doc. 63. In addition to Plaintiff, Muscente, Conrad Orey and Steven Brink attended the hearing. *Id.* At trial, Plaintiff testified as follows regarding the substance of the hearing:

> Q. What was the sum and substance of the conversation between Ms. Muscente and yourself and your brother?
>
> A. I could not have my signs. Shut up. Go away. You're not allowed. I make the rules here. That's basically what the substance was. It's not going to happen. They got to come down.
>
> But I can have my gravestone tombstones for Halloween down on the front lawn. I can have Go Yankees, which we did have a huge sign up for Go Yankees. It was across our house because we're all Yankee fans. You can have Merry Christmas, which I have two huge signs. One of them sparkles all over. You can have – you can have anything, but you can't have anything like these. You cannot criticize or make a statement. You cannot tell anyone what you want to say. But I could have all the other signs. And she said don't worry, I don't bother coming out for the other signs; meaning the Merry Christmas and stuff.
>
> Q. I'm sorry. She doesn't bother coming?
>
> A. She doesn't bother coming out for Christmas signs and Go Yankees and things like that. She'll only come out for these signs.

*Id.* at 16:8 – 17:3. Regarding the procedure for obtaining a sign permit, Plaintiff further stated:

> Q. What specifically did [Muscente] say with respect to submitting a proposed sign to her as part of the permit application?
>
> A. Yes. She will get to decide whether or not it can be a sign … Whether the wording on the sign was okay with her.

*Id.* at 17:21 – 18:3. After the hearing, Plaintiff did not remove her signs, and testified that she received another ticket for displaying signs without a permit from Muscente, as well as a warning notice from DePierro for the offense of illegally "post[ing] private signs on City property" and a ticket for displaying private signs on the "City right of way." *Id.* at 47:16 – 48:25; 21:7 – 21:24; Bellantoni Decl. Ex. 5 (Trial Exs. 8-9, 11).

Plaintiff's brother similarly testified that Muscente informed them that temporary signs stating, for example, "Go Yankees" or "Merry Christmas" would not require a permit, but her other (political) signs would. Maria Aff. Ex. A (Trial Tr. 13:4 – 14:11, May 13, 2014); *id.* at Ex. B (Trial Tr. 18:17 – 19:3, May 13, 2014).

Defendants testified that they did not know Plaintiff prior to issuing tickets to her, issued her the tickets because they believed that she failed to comply with the City Code, and did not consider the content of her signs in making their decisions. For example, Muscente testified as follows concerning the contents of the signs:

> Q. Did you have any concern about what the signs actually said?
>
> A. No, I did not. I am not able to enforce what a sign says as a code enforcement officer. I can only enforce the size, safety of a sign, things like that. I cannot enforce what a sign says.
>
> Q. Did you have any conversations with—the manner in which you obtained this complaint, whoever gave this complaint to you, one of your supervisors, did you ever have any discussion about the contents of the signs, what they said?
>
> A. No, I did not.
>
> Q. And the hearing with Mr. Orey, was there ever a conversation about the contents of the sign?
>
> A. No, there were [sic] not.
>
> Q. Did [Plaintiff] talk about the contents of the sign?
>
> A. She did not.
>
> Q. Did Steven Brink talk about the contents of the sign?
>
> A. No, he did not.

Maria Aff. Ex. D (Trial Tr. 21:5 – 21:22, May 14, 2014). Muscente further testified that constituents "were complaining about all the signs that [Plaintiff] displayed[,] not about the matter of what the sign said." Bellantoni Decl. Ex. 2 (Trial Tr. 7:5 – 7:17, May 14, 2014).

Although the City Code exempts temporary signs posted on *private* property from any requirement to obtain a permit, on cross-examination, Muscente testified that she interpreted the City Code to require permits for *all* temporary signs. Pl.'s Mem. 6-7, Doc. 64. However, Muscente also testified that she "[did] not know" whether Plaintiff displayed her signs for more than ninety days; that "[t]here were signs being displayed for more than 90 days" by Plaintiff, although she was not sure whether they were the same signs; and that Plaintiff "wasn't being [issued violations] for temporary signs. She was being [issued violations] for displaying signs without a permit." Bellantoni Decl. Ex. 2 (Trial Tr. 9:7 – 12:16). Muscente further testified that, before taking any action, she took photographs of Plaintiff's signs then showed them to another supervisor, Department Commissioner John Meyer, to obtain his guidance on how to proceed; he responded by instructing her to issue a violation notice to Plaintiff. Maria Aff. Ex. D (Trial Tr. 8:3 – 8:20).

DePierro testified that he issued tickets to Plaintiff based upon "no-trespassing signs" posted on "city property," because the City Code prohibits posting signs on public property. Maria Aff. Ex. E (Trial Tr. 12:3 – 12:22). DePierro specifically explained how, prior to issuing a warning notice to Plaintiff, he verified that she had posted signs on property that belonged to the City. *Id.* at 4:21 – 6:9.

Finally, Conrad Orey testified that he did not specifically recall the substance of the February 2010 hearing, including whether or not the attendees discussed the content of Plaintiff's signs. Pl.'s Mem. 8; Bellantoni Decl. Ex. 3 (Trial Tr. 3:3 – 3:5, May 14, 2014); Maria Aff. Ex. G (Trial Tr. 8:2 – 8:24).

On May 15, 2014, the jury returned a verdict in favor of Defendants on both of Plaintiff's claims. Through the instant motion, Plaintiff contends that the jury reached an erroneous result

and its verdict in favor of Defendants constitutes a miscarriage of justice, as it lacked a "legally sufficient evidentiary basis." Pl.'s Mem. 10-11. Notably, Plaintiff does not appear to challenge the verdict with respect to Defendant City; rather, she solely focuses on Muscente and DePierro.

Plaintiff first argues that the jury's verdict with respect to Defendant Muscente "was seriously erroneous … and a miscarriage of justice" because (1) the evidence at trial established that there was no probable cause for Muscente to have issued tickets to Plaintiff for displaying signs without a permit; and (2) Plaintiff offered "undisputed" testimony establishing "that the reason the tickets were issued was based on the content of the signs." Pl.'s Mem. 13. Plaintiff further argues that the jury incorrectly found in Muscente's favor on the malicious prosecution claim because Muscente's "clear, blatant, arrogant and intentional disregard for the plain language of the City Code … and the undisputed substance of the conversation that took place during the February [] 2010 meeting" demonstrated that she acted with malice. *Id.* at 14.

With respect to Defendant DePierro, Plaintiff argues that the evidence at trial established that (1) DePierro had no probable cause to issue a ticket to Plaintiff for posting her signs on City property, because the City Code does not proscribe "placing temporary signs on the [C]ity's 'right of way'" and (2) DePierro's actions evinced "a reckless and callous disregard for Ms. Brink's established rights." Pl.'s Mem. 15. Thus, Plaintiff submits, the jury's verdict in favor of DePierro on both claims was against the weight of the evidence.

## II.     Legal Standard

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a district court may grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). It is well-established in this Circuit that, in order to grant a motion for a new

trial under Rule 59(a), a court "must conclude that the jury has reached a seriously erroneous result or ... [that] the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as against the weight of the evidence.'" *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 558 (S.D.N.Y. 2010) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003)); *see also, e.g.*, *Carroll v. Cnty. Of Monroe*, 712 F.3d 649, 653 (2d Cir. 2013); *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 146 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1724 (2013); *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006).

"Rule 59(a) … has a less stringent standard than Rule 50 in two significant respects:  (1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Manley*, 337 F.3d at 244-45 (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)).  The task before the Court is to balance "respect [for] the jury's findings (and respect [for] the parties' Seventh Amendment right to trial by *jury*) with avoidance of miscarriage of justice," and, if after viewing all the evidence, the Court has "a definite and firm conviction that a mistake has been committed, it is to be expected that [it] will grant a new trial." *Cunningham v. Town of Ellicott*, No. 04 Civ. 301, 2007 WL 1756502, at *4 (W.D.N.Y. June 18, 2007) (citations omitted) (emphasis in original), *aff'd*, 310 F. App'x 448 (2d Cir. 2009).

Yet, "[i]n weighing the evidence … the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility." *Mugavero*, 680 F. Supp. 2d at 558–59 (internal quotation marks and citation omitted).  A court should only grant a Rule 59 motion for a new trial when the jury's verdict is "egregious," and thus should rarely disturb a jury's evaluation of witness credibility. *DLC Mgmt.*, 163 F.3d at 133-34 (citations omitted);

7

*accord Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (holding that the jury's evaluation of witness credibility merits a "high degree of deference," and "jury verdicts should be disturbed with great infrequency"), *cert. denied*, 133 S. Ct. 789 (2012).  Indeed, the Second Circuit has held that "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *abrogated on other grounds as noted in Yung v. Lee*, 432 F.3d 142, 147 (2d Cir. 2005); *see also, e.g.*, *Zhiwen Chen v. Cnty. of Suffolk*, 927 F. Supp. 2d 58, 67 (E.D.N.Y. 2013) (holding that "it would be improper to grant a new trial under these circumstances as the issue of the force exercised by defendants was dependent on the assessment of the credibility of the witnesses").  "[O]ur precedent counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge … may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" *Raedle*, 670 F.3d at 418 (citation omitted).

In sum, in assessing the instant motion, the court is mindful:

> (1) that Plaintiff had the burden of proving by a preponderance of the evidence each of the elements of her claims against each defendant; (2) that a defendant has the burden of proof with respect to affirmative defenses, and qualified immunity is such a defense; (3) that the weight of the evidence, while a basis for argument to the jury, is not a ground for reversal on appeal; and (4) that a jury is entitled to believe part and disbelieve part of the testimony of any given witness, and its assessments of witness credibility and its choices between competing factual inferences are not to be second-guessed.

*Lore v. City of Syracuse*, 670 F.3d 127, 149-50 (2d Cir. 2012) (internal citations omitted).

### III. Discussion

#### A. Section 1983 Claim for First Amendment Retaliation

To succeed on her First Amendment retaliation claim, Plaintiff bore the burden of proving by a preponderance of the evidence that, *inter alia*, "[D]efendants' conduct"—*i.e.*, issuing Plaintiff tickets and warning notices for violations of the City Code—"was motivated by or substantially caused by [Plaintiff's] exercise of speech." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 222 (N.D.N.Y. 2012) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994)), *aff'd*, 524 F. App'x 742 (2d Cir. 2013); *see also Zherka v. Amicone*, 634 F.3d 642, 643 (2d Cir. 2011); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 n.11 (S.D.N.Y. 2011).

Plaintiff's arguments—that Muscente "offered no testimony on cross-examination to contradict" the Brinks' testimony that she ordered Plaintiff to take down her signs because of their content; that Defendants "offered no evidence to contradict" the Brinks' testimony concerning the February 2010 hearing; and that the Brinks' testimony concerning the February 2010 hearing "went completely undisputed" because Muscente and Orey did not recall the conversation at the hearing regarding Plaintiff's signs—all suffer from the same logical flaw: they presume that, because the jury *could* have credited portions of the Brinks' testimony, the jury was *required* to find in Plaintiff's favor. Yet, it is well-established "that a jury is entitled to believe part and disbelieve part of the testimony of any given witness, and its assessments of witness credibility and its choices between competing factual inferences are not to be second-guessed." *Lore*, 670 F.3d at 149-50. As the Court instructed, the jury is "not required to accept testimony even though the testimony is not contradicted and the witness's testimony is not challenged. [The jury] may decide because of the witness's bearing or demeanor, or because of

9

the inherent improbability of the testimony, or for other reasons sufficient to [them]selves that the testimony is not worthy of belief." Bellantoni Decl. Ex. 7 (Jury Charge at 24).[2]  Because the jury was entitled to believe or *disbelieve* the Brinks' testimony, the jury was free to reject the Brinks' testimony and find, as it evidently did, that Plaintiff failed to carry her burden.

Moreover, in point of fact, Muscente's testimony *did* contradict Plaintiff's—when questioned, "did you have any concern about what the signs actually said," Muscente responded that she did not, and that she was unable "to enforce what a sign says." Maria Aff. Ex. D (Trial Tr. 21:5 – 21:22). Additionally, with respect to the February 2010 hearing, her testimony was not, as Plaintiff claims, that she did not recall the hearing; rather, Muscente testified that a conversation about the content of Plaintiff's signs never occurred, and that Plaintiff and her brother did not talk about the content of the signs. *Id.*  In any event, the Court also rejects Plaintiff's argument that because Muscente and Orey *did not recall* alleged conversations wherein they supposedly commented on the content of Plaintiff's signs, it means that they *do not dispute* Plaintiff's account of such conversations. A lack of recollection is not a lack of dispute.

Indeed, given the divergent narratives presented by the parties here, the plain task for the jury was to determine, as between Plaintiff and Defendants' respective versions of events, which they found more credible. The jury was entitled to credit Muscente's testimony that she did not make enforcement decisions based on the content of the signs, as well as DePierro's testimony that he issued tickets to Plaintiff due to the location of the signs on City property. More importantly, the jury was entitled to resolve the conflicts in the testimony presented by concluding that the February 2010 hearing did not transpire in the manner claimed by Plaintiff.

---

[2] Plaintiff did not object to this instruction.  *See also, e.g.*, 4 *Modern Federal Jury Instructions (Civil)* § 76.01 (Matthew Bender 2011) (concerning witness credibility).

10

Where, as here, the outcome of the trial "turn[s] to a large extent on the credibility of the witnesses who testified before the jury, the finding and the verdict which follow[] are particularly ill-suited to after-the-fact second guessing." *See ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 99 (2d Cir. 2014). Based upon its review of the record, the Court finds that the jury's verdict in favor of Defendants on Plaintiff's Section 1983 claim was not seriously erroneous or unjust, and therefore will not "substitute [its] assessment of the credibility of witnesses for that of the jury." *Raedle*, 670 F.3d at 418 (citation omitted); *Livingston v. Escrow*, No. 08 Civ. 6576 (FPG), 2014 WL 1466469, at *2 (W.D.N.Y. Apr. 15, 2014) (finding that the verdict was not egregious because the plaintiff failed to carry his burden of proving by a preponderance of the evidence the required elements of his § 1983 claims).

### B. Malicious Prosecution

To prevail on a New York state law claim for malicious prosecution, Plaintiff had to show, by a preponderance of the evidence, that Defendants commenced or continued a proceeding against her, with malice and without probable cause, and that the proceeding was terminated in her favor. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Manganiello*, 612 F.3d at 161-62 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). "In the context of a malicious prosecution claim, probable cause under New York law is 'the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.'" *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) (citing *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013 (App. Div. 4th Dep't

1991); *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983)). "A party may act with probable cause even though mistaken …. if the party acted reasonably under the circumstances in good faith.  Conversely, the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Colon*, 60 N.Y.2d at 82 (citations omitted).

With respect to malice, New York law "does not require a plaintiff to prove that the defendant was motivated by spite or hatred," but rather, "that [the defendant] initiated the criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Blake v. Race*, 487 F. Supp. 2d 187, 211-12 (E.D.N.Y. 2007) (quoting *Rounseville*, 13 F.3d at 629-30).  Malice is usually proven through circumstantial evidence, including, but not limited to, a lack of probable cause.  *Id.* (citation omitted).  "While lack of probable cause to institute a criminal proceeding and proof of actual malice are independent and indispensable elements of a malicious prosecution action," a jury may—but is not required to— "infer the existence of actual malice from the absence of probable cause."  *Id.* (citation omitted); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 170 (E.D.N.Y. 2010) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996)) ("In most cases, the lack of probable cause— *while not dispositive*—tends to show that the accuser did not believe in the guilt of the accused, and malice *may* be inferred from the lack of probable cause." (emphasis added)).

Plaintiff almost exclusively argues that, because the evidence at trial supported a finding that Defendants lacked probable cause to issue violations of the City Code to Plaintiff for posting her signs on city property, the jury was required to find in her favor.  However, here too, the outcome hinged upon credibility assessments, and the jury was entitled to discredit some or all of the testimony advanced by Plaintiff's witnesses, while crediting some or all of the defense

witnesses' statements. *Maurer v. Patterson*, 197 F.R.D. 244, 249 (S.D.N.Y. 2000). Thus, it is proper to refrain from discarding the verdict and granting a new trial. *Fugazy*, 983 F.2d at 363.

The Court also notes, however, that even assuming, as Plaintiff claims, that the evidence here could not support a finding of probable cause, Plaintiff also carried the burden of proving, by a preponderance of the evidence, the element of malice: that Defendants were motivated by "a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville*, 13 F.3d at 629-30. In her motion papers, Plaintiff merely argues in conclusory fashion that Defendants acted with malice, yet fails to offer a single citation to the record. Pl.'s Mem. 14-15; Pl.'s Reply Br. 3, Doc. 70. Based upon its independent review of the record, the Court concludes that Plaintiff failed to meet her burden in this regard; the evidence adduced at trial established that Defendants had not so much as met Plaintiff prior to issuing her tickets for violations of the City Code. Accordingly, the Court lacks "a firm and definite conviction here that the jury made a mistake in denying this claim." *Cunningham*, 2007 WL 1756502, at *7.

Particularly in light of the Second Circuit's admonition that trial courts should rarely disturb a jury's evaluation of witness credibility, *Raedle*, 670 F.3d at 418; *DLC Mgmt.*, 163 F.3d at 133-34, the Court finds that a new trial on Plaintiff's malicious prosecution claim is unwarranted.

## IV.   Conclusion

For the reasons set forth above, Plaintiff's motion for a new trial is DENIED. The Clerk of the Court is respectfully directed to terminate the pending motion (Doc. 62) and close the case. It is SO ORDERED.

Dated:   September 23, 2014
         New York, New York

_____
Edgardo Ramos, U.S.D.J.

13